S. C. KEARLEY, Adm'r., v. J. T. G. CRAWFORD, et al.

151 So. 293.

Opinion Filed September 21, 1933.

Rehearing Denied December 13, 1933.

*Kearly, Fisher, VanMeter & Chapman,* for Appellants;
*Crawford & May,* for Appellee.

DAVIS, C. J.—J. T. G. Crawford and Philip S. May, on August 2, 1932, commenced a civil action at law against Thomas E. Walton, in the Circuit Court of Palm Beach County. On February 13th, 1933, final judgment was entered therein for a recovery of $13,203.20. Execution was

thereupon issued against Thomas E. Walton based on the judgment.

The present suit was a proceeding in equity brought by the residuary legatees and trustees under the will of Martha E. Walton, deceased, for an injunction against the sheriff's proposed sale under the Thomas E. Walton judgment and execution, of a one-quarter interest in lands of the estate, alleged to have passed to Thomas E. Walton under the will, it being claimed in the bill of complaint that Walton had, before judgment was rendered against him, renounced his devise under the will, as well as his rights as an heir at law, so as to make the execution against him ineffective to involve his initial interest in the Martha E. Walton estate. The Chancellor dismissed the bill for want of equity and complainants below have appealed from that order.

By the will of Martha E. Walton, deceased, the residuary estate was devised to her four children, one of whom was the judgment defendant, Thomas E. Walton. About six months after the institution of the common-law suit against him by Crawford and May, but only about nine days before the entry of judgment against him in that suit, Thomas E. Walton filed and had recorded in the County Judge's office in Palm Beach County, his solemn renunciation in express terms, of the devise made to him by the will, as well as all of his rights as an heir at law in the estate of Martha E. Walton, his mother.

Conceding, as we must, that a correct statement of the law is to the effect that an election to take under or against a will is a personal right of the legatee or devisee, and that it is one that cannot be controlled by his creditors (Schoonover v. Osborne, 193 Iowa 474, 187 N. W. Rep. 20, 27 A. L. R. 465), the rule is that an injunction will not issue to restrain the sale of property under a valid judgment and

execution, except upon a clear right shown by complainant, and then only upon an unquestionable, or reasonably clear, equity. Davidson v. Seegar, 15 Fla. 671; Shalley v. Spillman, 19 Fla. 500.

In this case the relief prayed was for an injunction against the sale by the sheriff under the execution against Thomas E. Walton, and to restrain the appellees, as holders of the judgment, from asserting any lien on the property levied on.

It did not appear from the complaint that the appellants at the time of the filing of the bill, or the amendment to it, owned the title to the property in controversy, nor that a sheriff's deed to Thomas E. Walton's alleged one-fourth interest in the land levied on, if executed pursuant to sale, would be any more of a cloud on the property than the judgment against him would be without a sale under execution. So the motion to dismiss the bill of complaint as one brought to prevent a cloud being cast on appellant's supposed title to the land levied on by the sheriff was properly sustained by the Chancellor and should be affirmed. See Morgan v. Dunwoody, 66 Fla. 522, 63 Sou. Rep. 905; Brickell v. Trammell, 77 Fla. 544, 82 Sou. Rep. 221.

Affirmed.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS and BROWN, J. J., dissent.

ELLIS, J. (dissenting).—On the 13th day of February, 1933, J. T. G. Crawford and Philip S. May obtained a judgment in the Circuit Court for Palm Beach County against Thomas E. Walton in the sum of $13,203.07. A writ of execution was issued upon the judgment the following day. The writ coming into the hands of Acting Sheriff W. H. Lawrence was levied by him upon certain lots numbered from 22 to 31, both inclusive, of Ocean Vista, in Palm Beach

County. The sheriff thereupon gave notice by publication that he would sell the "lots" to the highest bidder for cash on April 3rd, 1933, before the door of the court house of the county.

Thomas E. Walton was a son of Martha E. Walton, a citizen and resident of St. Davids, Pennsylvania, who died in that State in November, 1931. At the time of her death she was the owner in fee of the "lots" in Ocean Vista above described. Mrs. Walton, whose husband had died prior to her own demise, left surviving her four children, Thomas E. Walton, Martha Walton Wiedersheim, Charles Spitall Walton, Jr., and Joseph William Walton. Mrs. Walton left a will which was duly probated in Delaware County, Pennsylvania. Her children and the Integrity Trust Company of Philadelphia·were appointed executors and trustees of her will. The trust company failed to qualify. The will was also admitted to probate in Palm Beach County. S. C. Kearly was appointed by the County Judge of Palm Beach County as administrator *cum testamento annexo*.

No specific reference is made in the will to the lots, although buildings are located upon the lands and are furnished with rugs, draperies, carpets, furniture and fixtures, all of which including the value of the lots and buildings is estimated to be worth about $127,500.00. The entire estate, including the Pennsylvania and Florida properties, was alleged to be worth about $281,000.00.

Mrs. Walton disposed of her entire estate by bequests of personal property and cash and the creation of trusts for the benefit of different persons named and certain religious and benevolent institutions and in the twenty-seventh paragraph of her will, following the numerous special bequests and the general but definite instruction that all her debts and funeral expenses be paid by her executors, she dis-

posed of "all the rest, residue and remainder of my (her) estate, real, personal and mixed, whatsoever and wheresoever" by devise and bequest to her four children named "in equal parts and shares in fee simple, absolutely and forever."

On the second day of February, 1933, about one year after the death of his mother and eleven days before Crawford and May obtained their judgment against him, Thomas E. Walton, by a written declaration under seal executed in the presence of two witnesses, the execution of which was duly acknowledged by him before a Notary Public in Pennsylvania, "forever and irrevocably" renounced "each and every legacy or devise, or any part or portion thereof, to me intended or attempted to be made" under the last will and testament of his mother and did thereby "absolutely and irrevocably decline to take or accept any property, either real or personal attempted or intended to be devised or bequeathed" to him under the will "to the same effect as though the said Martha E. Walton, deceased, had not attempted to make any devise or bequest" to him whatsoever under the will, and in addition thereto he renounced "any rights to share in the distribution of the estate of the said Martha E. Walton, deceased, either as legatee or devisee under said last will and testament or as an heir at law of the said Martha E. Walton, deceased." That document was filed in the office of the County Judge of Palm Beach County on February 4th, 1933, and recorded in the "Will Book."

In March, 1933, S. C. Kearley, as administrator *cum testamento annexo* of the will, and the four children of the deceased, as executors and trustees under the will, exhibited their bill in the Circuit Court for Palm Beach County against J. T. C. Crawford and Philip S. May and W. H. Lawrence, as sheriff, and prayed that the levy of the execution be de-

clared null and void and that Lawrence be temporarily restrained from attempting to sell the land under the execution, and that Crawford and May be enjoined from asserting or claiming any right, lien or demand against the property by reason of their judgment.

Later the bill was amended by joining as complainants' Martha Walton Wiedersheim and her husband, Charles Spitall Walton, Jr., and Joseph William Walton, three children of Martha, deceased, in their individual capacities, and averring that Martha Walton was a widow and unmarried at the time of her death and that she left surviving her as her sole heirs at law the four children named, and that since her death the "actual possession of the said real and personal property" has been held by the executors and trustees and administrator *cum testamento annexo* and substituting the name of J. S. Willson as sheriff in the place of W. H. Lawrence "discharged of his official capacity."

The will empowered the executors and trustees to sell and dispose of at their discretion all or any part of the estate real, personal or mixed wheresoever at public or private sale and to execute deeds necessary to convey the fee simple title without any liability to the purchaser. It empowered the executors and trustees to invest and reinvest the estate in real or personal property. The bill alleged that the estate was worth about $281,000.00; that there were debts amounting to about $57,000.00 and that expenses of administration and attorneys' fees would amount to about $30,000.00; that the net value of the estate would be about $194,000.00; that the cash bequests amounted to $107,000.00 and that the real estate described and personal property therein was approximately of the value of $127,500.00; that deducting from the estimated value of the estate the debts, expenses and attorneys' fees and the value of the real estate described

and the furniture, furnishings, etc., there could be realized only about $66,500.00 with which to pay the bequests amounting to $107,000.00.

Crawford and May answered the bill denying the alleged value of the estate and the amount of debts and expenses and attorney's fees, averring the latter to be unreasonable and disproportionate to the amount involved; that the true value of the estate was larger than alleged, averred that the legacies amounted to only $96,000.00 and neither admitted nor denied the alleged value of the lands and furniture.

The answer averred that the sale sought to be enjoined involved only an undivided one-fourth interest, and the remainder with the other portion of the estate was of sufficient value to pay all debts, expenses and bequests. The answer averred that the power of sale contained in the will did not vest the title to the land in complainants and denied that the written declaration of Thomas E. Walton was insufficient to divest him of "his title to said real estate and personal property in Palm Beach County, Florida, except subject to the lien of the said judgment and execution held by the defendants." The answer averred that upon the death of Mrs Walton "the title to said property passed by operation of law to the residuary beneficiaries named in said will, or in the alternative of said will being for any reason void or inoperative, or said pretended renunciation being valid, then said property descended to the heirs at law of said testatrix;" that the residuary beneficiaries under the will and the only heirs at law are the four children of the testatrix.

The answer avers that in August, 1932, the defendants' Crawford and May procured from the Circuit Court a writ of attachment against the property of Thomas E. Walton,

that the attachment was duly levied upon the said lands; that Walton appeared in said cause and defended the same and the trial was postponed to February 6th, 1933, at his request.

The contention is also set forth in the answer that Walton had estopped himself from renouncing the interest he received in the real estate and personal property in Palm Beach County under the will or as heir at law because he did not attempt it until after the lien of the judgment against him had attached. The answer concludes with a motion to dismiss the bill as without equity, that it does not appear that the sale of the real estate will deplete the estate so that the debts, expenses and bequests cannot be paid; that even if his renunciation as to the residuary bequest is valid he remains an heir at law and as such with an interest in the lands; that the power of sale in the executors is limited to the necessity of carrying out the objects of the testatrix as expressed in the will; that Thomas E. Walton could not divest himself of an inherited interest in real estate in Florida; that the title to the land is already clouded by the judgment, and other grounds.

The motion to dismiss the bill was granted by the circuit judge who denied also the complainants' application for a temporary restraining order. To that order the complainants took an appeal. This court on March 31st, 1933, upon the application of the appellants, enjoined Willson, as sheriff, from selling the lands under the Crawford and May judgment, asserting the power to do so under the provisions of Sec. 5 of Art. V of the Constitution empowering the Supreme Court to issue "all writs necessary or proper to the complete exercise of its jurisdiction."

On April 7th, 1933, Crawford and May presented in this Court their motion to dissolve the injunction. The grounds

set forth were that the facts set forth by the record do not authorize such a writ; that it was neither necessary nor proper; that the judgment obtained was valid and that the property is that of the judgment debtor; that the executors are under no necessity to resort to the property sought to be sold to fully carry out their duties under the will; that the attachment and judgment is as great a cloud on the title of the appellants as a sheriff's deed would be; that if the renunciation is effective as to the residuary devise Walton nevertheless inherited an interest in the property; that the bond should have been conditioned to pay the debt, referring to the bond which the appellants were required by order of this Court to give.

Aside from the propriety of issuing the constitutional writ above mentioned, which is not apparent, the cause may as well be determined on the merits as presented by the bill because the motion to dismiss contained in the answer sought to dismiss the bill. Under the new chancery Act, Chap. 14658, Acts 1931, the points of law presented by the motion must go to the whole of the cause stated in the bill. The motion to dismiss cannot be aided by the answer, therefore the court will consider only the facts alleged in the bill but nothing dehors the bill. Conway v. White (C.C.A.), 292 Fed. Rep. 837.

The answer, however, may be considered in aid of the bill. See Orange Belt Land Ex. Inc. v. Spear, 100 Fla. 182, 129 South. Rep. 779; McCarty's Ch. Act 5859.

So the question of the correctness of the Chancellor's decree must be tested by the allegations of the bill. We deem the question of law involved to be correctly stated in the brief of appellants' solicitors which in substance is: does a bill brought by residuary devisees and executors and trustees under the will of a deceased person contain equity where

one of the devisees, a son of the deceased and one of the executors and trustees, has renounced his interest under the will and as an heir at law, which bill seeks' an injunction to restrain the sale of an alleged fourth interest in land of the son renouncing his interest, under a judgment obtained against him subsequently to his renunciation and which seeks' to have the judgment declared to be a cloud upon the title to the land of the estate?

The validity of the will is not in question. Every person of the age of twenty-one years of sound mind has the power by last will and testament in writing to devise and dispose of his lands, "tenements" and hereditaments and of his estate, right, title and interest in the same in possession, remainder or reversion. Section 5457, C. G. L., 1927 (Secs. 3592, R. G. S., 1920).

The land in question was not a homestead of the testatrix. The will shows a clear intention of disposing of the entire estate of the testatrix. It made bequests of cash and other personal property which from the allegations of the bill will require the executors and trustees to sell and dispose of the lands to carry out the bequests made. They were empowered by the will to sell and dispose of all or any part of the real estate of the testatrix wherever located to such person or persons and for such prices as to them seem meet and to convey the same by deeds of conveyance in fee simple. That is a valid power.

Under the twenty-seventh clause of the will the children of the testatrix took by devise and not by inheritance the rest and residue of the estate of the testatrix after all the bequests and devises specially made were executed.

The special devises and bequests take precedence over general devises or residuary clauses and it is presumed in respect to other gifts that the testator gave the property

away from the residuary legatee only for the sake of the particular legatee. See English v. Cooper, 183 Ill. 203, 55 N. E. Rep. 687; Harlow v. Bailey, 189 Mass. 208, 75 N. E. Rep. 259; Reeves v. Reeves, 16 N. C. 390; Prison Ass'n. of Virginia v. Russell's Adm'r, 103 Va. 563, text 571, 49 S. E. Rep. 966; Dorsey v. Dodson, 203 Ill. 32, text 37; 67 N. E. Rep. 395; MaGee v. Doe, 9 Fla. 382.

There is no question of void or lapsed legacies in this case. As to the matter of renunciation by a beneficiary under the will, a bequest or·devise vests in the donee only upon his acceptance thereof. He has the right to elect whether to take or not. The presumption is in favor of acceptance when beneficial but it is not a conclusive presumption and may be overcome by renunciation or disclaimer of the beneficiary. Defreese v. Lake, 109 Mich. 415, 67 N. W. Rep. 505, 32 L. R. A. 744; Perry v. Hale, 44 N. H. 363; Hart v. Hart, 81 Ga. 785, 8 S. E. Rep. 182; Doe v. Smyth, 6 B. & C. 112, 13 E. C. L. 62, 108 Eng. Rep. 394; Webster v. Gilman, Fed. Cas. No. 17,335, 1 Story 449; Bryan v. Hyre, 1 Rob. 94, 39 Am. Dec. 246; Lehr v. Switzer, 213 Iowa 658, 239 N. W. Rep. 564.

This case also holds that a creditor may not complain because of the beneficiary's final renunciation of all benefits granted to him under the will. See Schoonover v. Osborne, 193 Iowa 474, 187 N. W. Rep. 20, 27 A. L. R. 465.

An election to take under or against a will is the personal right of the legatee or devisee and cannot be controlled by his creditors.

. In view of the above doctrines, which seem to be well established and generally recognized as applicable to similar situations, the question is narrowed to the inquiry as to whether Thomas E. Walton in renouncing all benefits under the will acted in that matter before a conclusive presumption

of acceptance arose, or an estoppel to deny acceptance. While he may not in the interest of his creditors be compelled to accept the bequest or devise yet there may be circumstances in which a beneficiary or devisee by his conduct permitted, if he did not indeed induce, his creditors to rely upon his acceptance of the beneficial provisions of the will in his favor which would estop him from renouncing his interests under the will. See Daniel v. Frest, 62 Ga. 697.

If the renunciation is made in time the fact that the beneficiary had creditors who are proceeding against him by actions at law or otherwise will not defeat his right to renounce the bequests in his favor or decline to accept the title to real estate. His renunciation is not regarded as a voluntary conveyance to defeat his creditors. It relates back to the date of the gift which being true there was nothing of which to make a voluntary conveyance. See Bradford v. Calhoun, 120 Tenn. 53, 109 S. W. Rep. 502, 19 L. R. A. (N. S.) 595, see note; 2 Page on Wills (2nd Ed.), Sec. 1234.

It is also true that an "heir" may renounce his right in certain circumstances, but that point is not involved as we understand the allegations of the bill.

We discover nothing in the bill which would estop Thomas E. Walton from renouncing his beneficial interests under the will either as special legatee or under the residuary clauses. The renunciation was not unnecessarily delayed. Mrs. Walton died in November, 1931. Thomas E. Walton is a non-resident of Florida apparently, and in February, 1933, about a year and two months afterwards, he filed in the County Judge's Court of Florida the renunciation attacked by appellees.

It does not appear from the allegations of the bill, nor the

terms of the will, that Thomas E. Walton or his brothers and sister would necessarily take any interest in real estate. Whether they would depends upon the ability of the trustees to pay to the beneficiaries the special bequests of money made and to set apart the various sums in trust required by the will to be set up. The interest in any lands depended entirely upon the ability of the trustees to realize sufficient funds to defray expenses, pay debts and special bequests. Again neither Thomas E. Walton nor any of the other beneficiaries, children of Mrs. Walton, would take as heirs but only as beneficiaries under the will. We are not deciding whether the answer sets up a valid defense to the relief sought by the bill nor whether the averments destroy the apparent equity in the bill. Time is allowed sufficient in which to attack the legal sufficiency of the answer. Sec. 38 New Chancery Act, *supra*.

In this view of the case the decree of the Chancellor was erroneous and the same should be reversed with directions to proceed in accordance with the views herein expressed.

BROWN, J., concurs.